# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

JOHNNY L. BUTLER
REG. #12790-076                                                    PETITIONER


VS.                              2:08CV00192 JLH/JTR


T.C. OUTLAW, Warden,
FCI Forrest City                                                   RESPONDENT


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A 149
Little Rock, AR 72201-3325

## I. Background

On October 27, 2008, Petitioner, Johnny L. Butler, initiated this 28 U.S.C. § 2241 habeas action in which he requests the Court to: (1) order the BOP to remove the "Sex Offender" Public Safety Factor ("PSF") it assigned to him after he was incarcerated; and (2) vacate a disciplinary conviction that he received on May 23, 2007, while incarcerated at FCI Forrest City.[1] (Docket entry #1).

On April 3, 2009, Respondent filed a Motion to Dismiss, in which he argues that: (1) Petitioner's attack on his PSF is not cognizable in a § 2241 habeas action; and (2) Petitioner's challenge to the disciplinary conviction fails on the merits. On April 23, 2009, Petitioner filed a

---

[1]On May 30, 1991, Petitioner was convicted, in the Western District of Tennessee of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. *United States v. Butler*, W.D. Tenn. No. 2:91CR20130-1 JPM. Petitioner was sentenced to 262 months of imprisonment in the BOP. This habeas action does not attack any aspect of his underlying conviction and sentence.

Response.  (Docket entry #22).  Thus, the issues are joined and ready for disposition.

For the reasons discussed below, the Court recommends that the Motion to Dismiss be granted.

## II.  Discussion

## A.  Petitioner's Challenge to His "Sex Offender" PSF

### 1.  Facts Giving Rise to Petitioner's Status as a Sex Offender

Petitioner's Presentence Investigation Report indicated that he had a juvenile state court conviction for contributing to the delinquency of a minor.[2] (Docket entry #1 at 3).  On July 11, 1973, a juvenile court judge found Petitioner guilty, and sentenced him to sixty days on the Shelby County penal farm.[3]  (Docket entry #3 at 3-4).

Based on these juvenile court documents, the BOP assigned Petitioner a "Sex Offender" PSF.[4] (Docket entry #3 at 7).  Petitioner claims that, after he learned of the Sex Offender PSF, he

---

[2]According to court documents, on June 27, 1973, Petitioner was charged in juvenile court in Shelby County, Tennessee with contributing to the delinquency of a minor, a fifteen year-old-girl, L.D.H., "in that the accused did harbor said child knowing she had runaway from home without the mother's knowledge or consent."(Docket entry #3 at 2).

[3]The record does not establish Petitioner's age at the time of the juvenile court conviction.

[4]In Program Statement 5100.08, chapter 5, the BOP defines "Public Safety Factors" as "relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public."  An inmate's "Public Safety Factor" is one of numerous variables the BOP uses in designating an inmate to a particular institution and deciding the level of security and supervision he requires.  In pertinent part, the criteria for a "Sex Offender" PSF are as follows:

> Sex Offender. A male or female inmate whose behavior in the current term of confinement or prior history includes one or more of the following elements will be housed in at least a Low security level institution, unless the PSF has been waived. A conviction is not required for application of this PSF if the Presentence Investigation Report (PSR), or other official documentation, clearly indicates the

pursued and exhausted an administrative grievance claiming that the BOP relied on "inaccurate" or "incorrect" information because: (1) the juvenile court charge and conviction was not a sex offense; and (2) he was a juvenile at the time of the incident.[5]

### 2.     Petitioner's Privacy Act Challenge to the Sex Offender PSF

First, Petitioner argues that the BOP's assignment of a Sex Offender PSF violates the Privacy Act, 5 U.S.C. § 552a.[6]  According to Petitioner, the BOP erred in using his juvenile court conviction

---

following behavior occurred in the current term of confinement or prior criminal history. If the case was dismissed or nolle prosequi, application of this PSF cannot be entered. However, in the case where an inmate was charged with an offense that included one of the following elements, but as a result of a plea bargain was not convicted, application of this PSF should be entered.

Example: According to the PSR, the inmate was specifically described as being involved in a Sexual
Assault but pled guilty to Simple Assault. Based on the documented behavior, application of this PSF should be entered [sic]:

(1) Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault or sexual battery);
(2) Possession, distribution or mailing of child pornography or related paraphernalia;
(3) Any sexual contact with a minor or other person physically or mentally incapable of granting consent (indecent liberties with a minor, statutory rape, sexual abuse of the mentally ill, rape by administering a drug or substance);
(4) Any sexual act or contact not identified above that is aggressive or abusive in nature (e.g., rape by instrument, encouraging use of a minor for prostitution purposes, incest, etc.). Examples may be documented by state or Bureau of Prisons' incident reports, clear NCIC entries, or other official documentation;
(5) Attempts are to be treated as if the sexual act or contact was completed; and/or,
(6) Any offense referenced in the Sex Offender Notification and Registration Program Statement.

BOP Program Statement 5100.08, Chapter 5, Page 8.

[5]Respondent does not dispute that Petitioner has exhausted his administrative remedies.

[6]The Privacy Act, 5 U.S.C. § 552a, governs how a federal agency must maintain and disclose collected information about individual citizens and lawfully-admitted aliens. A federal agency must

to assign him the Sex Offender PSF. Petitioner requests that the BOP be compelled to "correct" its records, pursuant to the Privacy Act, and remove the Sex Offender PSF.[7]

Respondent argues that Petitioner cannot bring a Privacy Act claim in a § 2241 habeas action. The Court agrees.

By definition, a habeas action is limited to claims concerning the *execution* of a federal sentence. *See, e.g., Burnam v. Marberry*, 2008 WL 4190785, *5 (W.D. Pa. 2008) (§ 2241 habeas petitioner's "Privacy Act claim should have been raised in a separate civil suit and subjected to all of the strictures of the Prison Litigation Reform Act, and not raised in a habeas action under 28 U.S.C. § 2241.") (unpublished decision); *Lawson v. Berkebile*, 2008 WL 3906854, *1 (N.D. Tex. 2008) (§ 2241 habeas petition relying on Privacy Act was dismissed because the Privacy Act

---

"maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." *See* 5 U.S.C. § 552a(e)(5). The Privacy Act establishes a civil remedy where an agency has violated its requirements and the individual has suffered adversely. *See* 5 U.S.C. § 552a(g).

[7]None of the juvenile court documents in the record explain or describe what Petitioner did to contribute to the delinquency of the minor fifteen-year old girl, other than "harboring her" and "knowing that she had runaway from home . . ." Certainly, being found guilty of the charge of "contributing to the delinquency of a minor" in no way establishes that Petitioner, who was himself a minor at the time of the offense, had any sexual contact with the fifteen-year old girl. However, in Respondent's Motion to Dismiss, he unequivocally states that "Petitioner harbored a 15-year old runaway *and had sex with her.*" (Docket entry #21 at 4) (emphasis added). While Respondent does *not* provide the source for this very specific factual assertion, it seems fair to assume the BOP must have relied on something more than the juvenile court documents that are in this habeas record to determine that Petitioner had sex with a minor. The Court would be very troubled if the BOP relied *solely* on the documents in this habeas record (which establish only that Petitioner was found guilty in juvenile court of contributing to the delinquency of a minor female by "harboring" her without her mother's consent) to hazard a *guess* that Petitioner also must have had sex with the girl. However, as explained later in Section II.A.3 of this Recommended Disposition, the constitutionality of the BOP's PSF assignment is an issue that must be raised in a *Bivens* civil rights action, not a § 2241 habeas action.

provided "a basis for a non-habeas, civil action in federal court" — "the Court will not construe this habeas action as a non-habeas civil action."). If Petitioner wishes to pursue a Privacy Act claim against the BOP, he must file a separate civil suit asserting this cause of action.[8]

### 3. Petitioner's Due Process Challenge to the Sex Offender PSF

Petitioner argues that, in assigning him a Sex Offender PSF, the BOP violated his due process rights by relying on incorrect and inaccurate information. However, Petitioner indicates that the only adverse consequences he has suffered from this classification are that he can not "participate in certain programs" and he is "ineligible for transfer to [a] camp facility."

Respondent counters that Petitioner's constitutional claim is not cognizable in a § 2241 habeas action because it bears on the conditions of confinement, not on the execution or length of his federal sentence.

Petitioner relies on *Jones v. Stiff*, 2000 WL 34494817 (D. Minn. 2000) (unpublished decision) to support his argument that this due process claim is cognizable under § 2241. In that case, Jones, a § 2241 habeas petitioner, alleged that the BOP incorrectly assigned him a Sex Offender PSF which rendered him ineligible for participation in the Residential Drug Abuse Treatment Program, including the possibility of a one-year sentence reduction. The BOP assigned him a Sex Offender PSF because his Presentence Report described one incident in his criminal history in which

---

[8]Before filing such an action, Petitioner should keep in mind that other federal prisoners, who have pursued similar Privacy Act claims against the BOP, have had their cases dismissed. Pursuant to the authority in 5 U.S.C. § 522a(j), the BOP has exempted the "Inmate Central Records System" from the Privacy Act's amendment requirements. *See* 28 C.F.R. § 16.97(a)(4); *Bowles v. BOP*, 2010 WL 23326 (S.D.N.Y. 2010) (federal inmate's Privacy Act claim that the BOP assigned him a Sex Offender PSF based on incorrect information failed to state a cause of action based on the statutory exemption) (unpublished decision); *Clow v. BOP*, 2008 WL 27055193 (D. D.C. 2008) (same) (unpublished decision).

he was charged with criminal sexual assault, theft, aggravated assault, unlawful possession of a firearm, and unlawful use of a weapon.

The factual basis for all of these charges arose from Jones allegedly pulling a woman into his dormitory room and forcing her to have sex with him. After several male students knocked on the door, Jones opened it and brandished a handgun. The woman later refused to testify against Jones, and all five charges were dismissed. However, Jones was recharged with aggravated assault, unlawful use of a weapon, and unlawful restraint. He later plead guilty to the last two charges.

Based on this record, the United States Magistrate Judge recommended granting § 2241 habeas relief because there was "insufficient evidence in the record to conclude that Petitioner's prior criminal history clearly indicates certain elements related to illegal sexual activity." *Jones*, 2000 WL 34494817 at *2. The United States District Judge adopted the Recommended Disposition and directed the removal of the Sex Offender PSF from Jones' institutional record. *See Jones v. Stiff*, 2000 WL 34494816 (D. Minn. 2000) (unpublished decision).

The *Jones* decision provides some support for Petitioner's position that his claim is cognizable in a § 2241 habeas action. However, the court in *Jones* made no analysis of the jurisdictional issue other than to imply that, because Jones was ineligible for the drug-treatment program due to his Sex Offender PSF, this might adversely affect the length of his sentence.

The *Jones* decision is contrary to a long line of cases holding that, because the BOP's assignment of a PSF does *not* implicate a constitutionally protected liberty interest affecting the length of confinement, a § 2241 habeas action is *not* the proper vehicle for challenging an allegedly incorrect PSF assignment. *See, e.g., Wilks v. Mundt*, 25 Fed. Appx. 492, 2002 WL 113837 (8th. Cir. 2002) (although the § 2241 habeas petitioner claimed that the BOP wrongfully refused to remove

a Sex Offender PSF, which made him ineligible to participate in a drug treatment program that could have resulted in his early release, the Eighth Circuit held that this claim "failed to implicate a protected liberty interest upon which he could base his procedural due process claim") (unpublished decision); *Day v. United States Dep't of Justice*, 275 Fed. Appx. 90 (3rd Cir. 2007) (district court did not err in rejecting claim of § 2241 habeas petitioner that assignment of Sex Offender PSF deprived him of liberty without due process: "[petitioner] had no liberty interest in the degree of his confinement") (unpublished decision); *Bazuaye v. Thompson*, 275 F.3d 55 (5th Cir. 2001) (§ 2241 habeas petition was properly dismissed where petitioner claimed that the incorrect assignment of a Deportable Alien PSF rendered him ineligible for possible early release through participation in a drug-treatment program, noting that there is "no constitutionally protected liberty interest in early release for completion of drug-abuse treatment"); *Levi v. Ebbert*, 2009 WL 2169171 (M.D. Pa. 2009) (§ 2241 habeas petitioner who claimed that the BOP's Public Safety Factor calculation violated his due process rights failed to state a habeas claim: Petitioner's claim was in substance a conditions of confinement claim cognizable in a civil rights lawsuit, and "not cognizable in a § 2241 habeas petition") (unpublished decision); *Pinkney v. United States Dep't of Justice*, 2009 WL 277551 (N.D. W. Va. 2009) (§ 2241 habeas petitioner's claim that the BOP improperly assigned higher Public Safety Factor scores to District of Columbia inmates was not cognizable in a habeas action: "Because the remedy to this challenge would be a recalculation of [the petitioner's] security level, rather than a recalculation of the duration of his confinement . . . the claim properly should be raised in a civil rights complaint, not raised through § 2241.").

Consistent with the Eighth Circuit's holding in *Wilks*, the Court concludes that the BOP's assignment of a PSF does not implicate a constitutionally protected liberty interest affecting the

length of confinement. This is particularly true in this case, where the only adverse consequences arising from Petitioner being a Sex Offender PSF are his disqualification from: (1) participating in certain unspecified programs; and (2) being considered for transfer to a camp facility. Accordingly, the Court concludes that Petitioner's due process challenge to his Sex Offender PSF fails to state a cognizable § 2241 habeas claim.[9]

**B. Petitioner's Due Process Challenge to his Disciplinary Conviction**

### 1. The Factual Background of Petitioner's Disciplinary Conviction

According to a May 2, 2007 Memorandum from Lt. E. Gonzalez, at 9:53 a.m., he heard Petitioner tell Lt. W. Ward "that if he [Ward] did not get him [Petitioner] off the compound he was going to kill a staff member. [Petitioner] stated he needed to get off the compound and get to a high security facility." (Docket entry #21-2 at 14). Dr. Robert Levine also wrote a May 2, 2007 Memorandum stating that Petitioner "made a verbal threat to harm an undisclosed staff member if he did not get placed in the SHU." (Docket entry #21-2 at 13). According to Dr. Levine, Petitioner made this comment to him and Lt. Ward. *Id.*

On May 2, 2007, Lt. Ward charged Petitioner with a "code 203" violation for "threatening another person with bodily harm." (Docket entry #21-2 at 7). According to Lt. Ward's Incident Report, Petitioner "admitted to me [Ward] that you [Petitioner] were going to kill a staff member. Specifically you stated, 'If you do not lock me up and get me off this Compound, I will kill a staff member and it will be on you. I need to go to a higher security prison." *Id.* Petitioner denied making the alleged statement. *Id.* The Incident Report was delivered to Petitioner at 12:30 p.m. on

---

[9]If Petitioner wishes to pursue a due process claim challenging the Sex Offender PSF, the appropriate vehicle is a civil-rights action pursuant to *Bivens v. Six Unknown named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

May 2, 2007. *Id.* On May 8, 2007, the Unit Disciplinary Committee ("UDC")[10] met and referred

the matter to a Disciplinary Hearing Officer ("DHO"). (Docket entry #21-2 at 7).

On May 23, 2007, a disciplinary hearing was held before a DHO. Petitioner requested staff

representation, and he was represented by L. McNeill. (Docket entry #21-2 at 12). Petitioner made

a statement at the hearing, which the DHO summarized as follows:

> When asked if you [Petitioner] wanted to provide a statement, you denied making the
> statements indicated in the Incident Report. You stated you had gone to medical
> earlier in the week because you had started breaking out on your head and your eye
> was swollen. On Sunday you went to work in food service and told your supervisor
> you needed to see medical. You were told you couldn't go unless you were bleeding
> or dying. You stated you did want to see medical and if you had to get locked up to
> do so, than [sic] so be it. You denied, however, threatening anyone in order to get
> placed in SHU.

(Docket entry #21-2 at 3). Petitioner requested and obtained a statement from Inmate Brumfield,

who confirmed "I didn't hear anything." (Docket entry #21-2 at 4, 15).

The DHO found Petitioner guilty of committing a "code 203 violation" for "threatening

another with bodily harm." (Docket entry #21-2 at 4). In his decision, the DHO provided a detailed

recitation of the specific evidence that supported his findings. (Docket entry #21-2 at 5-6).

Petitioner received the following punishment: (1) thirty days of disciplinary segregation, suspended;

(2) disallowance of fourteen days of good time credit; and (3) the loss of ninety days of commissary,

phone, and visitation privileges, suspended. (Docket entry #21-2 at 6). Petitioner contends that he

pursued all administrative appeals of his disciplinary conviction.[11]

---

[10]The UDC is responsible for holding an initial hearing upon completion of an incident investigation. BOP Program Statement 5270.07 at Ch.1, p.5.

[11]Respondent does not dispute that Petitioner has exhausted his administrative remedies.

**2. Analysis of Petitioner's Due Process Claims Challenging his Disciplinary Conviction**

The United States Supreme Court has held that a disciplinary conviction which results in a prisoner losing *good time credits* implicates a liberty interest protected by the Due Process Clause. *See Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974).[12] Because the loss of good time credits affects the duration of a prisoner's sentence, a § 2241 habeas action is a prisoner's exclusive remedy. *See Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002).

First, Petitioner argues that he is entitled to restoration of his lost good-time credits because the UDC did not meet until four days after the incident, one day beyond the three-day maximum provided for under BOP policy.[13] However, Petitioner cites no legal authority to support his claim that this one-day delay rose to the level of a constitutionally cognizable due process violation or that it prejudiced him in any way. Thus, the Court concludes that this argument is without merit.

Second, Petitioner contends that he was not allowed to "subpoena" various testimony from

---

[12]The Court in *Wolff* also held that due process requires that an inmate, who is the subject of a disciplinary proceeding, must receive: (1) written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement from an impartial decision maker identifying the evidence relied on and the reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

Eleven years later, in *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Court held that the decision of the prison disciplinary hearing officer is only required to be supported by "some evidence in the record." Where the record contains some evidence to support the decision of the DHO, the decision cannot be characterized as arbitrary. *Id.* at 457.

[13]BOP policy provides that, "ordinarily," there should be a maximum of three "work" days, excluding holidays and weekends, between an incident and the inmate's initial UDC hearing. BOP Program Statement 5270.07 at Tbl. 2.

The incident in this case occurred on May 2, 2007, a Wednesday. Therefore, Petitioner's UDC hearing should have been held no later than May 7, 2007, the following Monday. Petitioner's UDC hearing was not held until May 8, 2007, one day late. According to a BOP "Advisement of Incident Report Delay" form, Petitioner's UDC hearing was delayed due to "administrative errors within correctional services." (Docket entry #21-2 at 9).

witnesses and other evidence for use at the disciplinary hearing. According to Petitioner, by the end of April 2007, he was breaking out in sores and feared he had a staph infection. On April 30, 2007, Petitioner contends he went to "medical" where "PA Gaia" told him that, because he was not dying or bleeding, he would have to wait until a subsequent sick-call to get medical attention. When Petitioner's name was not on sick-call for May 1 or May 2, he panicked and went to talk to Lt. Ward, who told him there was nothing he could do. Petitioner "panicked" and told Lt. Ward that he was not going to return to his housing unit until he got medical attention. Lt. Ward left and returned with Dr. Levine. According to Petitioner, they told him that, if he did not return to his housing unit, they were going to fabricate a fictitious charge that he threatened to kill an officer. Petitioner states that on May 3, 2007, he was seen by a doctor and later received treatment for what was a herpes infection.

Petitioner argues that the DHO refused his requests to "subpoena" the following evidence: (1) the testimony of "PA Gaia;" (2) the audio tape of a phone call he made to a friend the morning of May 2; and (3) the video surveillance tapes of the area around Lt. Ward's office. According to Petitioner, this evidence would have established his medical condition; his "panicked" mental state; and inconsistencies in the timeline of events described by Lt. Ward and Dr. Levine. Petitioner also points out that, in his long history of incarceration in the BOP, this is the only incident report even filed against him.

Importantly, nothing in the record supports Petitioner's assertion that he made the request for this evidence or testimony, much less that it was denied by BOP officials. Furthermore, even if he had obtained the requested testimony and evidence, it is not readily apparent how it would have aided his defense, or altered the outcome of the proceeding. *See Howard v. United States*, 487 F.3d

808 (10ᵗʰ Cir. 2007) (applying harmless error analysis to due process claim that prison officials denied requested witness testimony at hearing); *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (constitutional violation in adjudicating prison disciplinary proceeding is subject to harmless error analysis).

In this case, there unquestionably was "some evidence in the record" to support the DHO's decision. Under *Hill*, federal courts are required to defer to the judgment of prison officials as long "as some evidence in the record" supports the disciplinary conviction and the due process requirements of *Wolff* are satisfied. This limited review does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence. *Id.* at 455. Prison officials can permissibly rely on violation reports and hearsay to find inmates guilty of disciplinary infractions. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir.2008); *Moore v. Plaster*, 313 F.3d 442, 444 (8th Cir. 2002). The Eighth Circuit has held that, as long as the disciplinary proceeding is held before an impartial decision maker, a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, constitutes "some evidence" upon which to base a disciplinary decision.[14] *See Hartsfield,* 511 F.3d at 831. The record in this case demonstrates that the disciplinary hearing satisfied the due process requirements of *Wolff* and that "some evidence in the record" supports the disciplinary conviction as required by *Hill*.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that Respondent's Motion to Dismiss (docket entry #21) be GRANTED, and that the case be DISMISSED, WITH PREJUDICE.

---

[14]Petitioner does not challenge the impartiality of the DHO.

Dated this 19th day of February, 2010.

_____
UNITED STATES MAGISTRATE JUDGE